Filed 11/20/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re AMANDA A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>AMANDA A.,<br><br>     Defendant and Appellant. | A144797<br><br>(Solano County<br>Super. Ct. No. J-42562) |

Appellant Amanda A. appeals from orders of the juvenile court continuing her as a ward of the court under Welfare and Institutions Code[1] section 602 and committing her to the custody of the probation officer for placement in New Foundations. She contends there was insufficient evidence to support the court's finding that she resisted or obstructed a peace officer; the court erred in failing to dismiss the section 602 petition, which she claims impermissibly increased her maximum confinement time; and the court abused its discretion in terminating her status as a section 300 dependent child and adjudging her a delinquent minor. We agree with her first contention and therefore reverse the orders.

**STATEMENT OF THE CASE AND FACTS**

Appellant, 16 years old when the petition underlying this appeal was filed, has a troubled history. Since 1999, her family has had 36 child welfare referrals from Lake,

---

[1] Further statutory references will be to the Welfare and Institutions Code unless otherwise specified.

Shasta, Siskiyou and Solano Counties;[2] it had five voluntary family maintenance cases between 2002 and 2014 but did not fulfill any of the suggested or requested services. At the time of these proceedings, appellant's parents were no longer in a relationship. Her mother had a criminal history dating to 1995,[3] but reportedly was currently stable, had appropriate housing and was working full time. Appellant's father had a lengthy criminal history including theft, drug, weapons and assault convictions,[4] and appellant had a restraining order against him.

Prior to the present case, appellant was adjudged a ward of the Shasta County Juvenile Court on September 29, 2009, after she admitted unlawfully causing a fire to a structure (Pen. Code, § 452, subd. (c)). According to the probation report in the present case, on April 12, 2012, the court found appellant not competent to assist in her defense after she was referred for a competency evaluation but the doctor was unable to interview her due to her uncooperativeness. Because of limited placement options, it was decided that appellant would be best served by staying with her parents and seeking mental health services in the community, and the wardship was terminated on May 2, 2012. Also in

---

[2] These consisted of 16 general neglect referrals, two found substantiated, three inconclusive, six unfounded and five "evaluated out"; nine physical abuse allegations, one substantiated, one inconclusive, one unfounded and six evaluated out; six "At Risk, sibling abused" allegations, one substantiated, two unfounded and two evaluated out; three emotional abuse allegations, two unfounded and one evaluated out; seven "Substantial Abuse" allegations, two substantiated and five evaluated out; one sexual abuse allegation evaluated out; and one "Exploitation" allegation found inconclusive.

[3] Appellant's mother had a juvenile arrest for petty theft and had been convicted of delivering a check with insufficient funds twice in 2001 and 2002, and in 2004 had been granted deferred entry of judgment, successfully completed in 2006, for being under the influence of a controlled substance.

[4] These consisted of a 1988 conviction for receiving stolen property, convictions for petty theft, possession of a controlled substance and assault with a deadly weapon in 1993 to 1999, convictions for unlawful carrying and possession of a weapon and possession of a controlled substance for sale in 1999 to 2003, a 2004 conviction for possession of a controlled substance for sale, and convictions for being under the influence of a controlled substance, cruelty to a child, assault with a deadly weapon and possession of concentrated cannabis from 2009 to 2014.

2012, appellant was granted informal probation for possession of marijuana (Health & Saf. Code, § 11357, subd. (e)).

Appellant reported that she was raped by an acquaintance at a party at age 12. In 2012, about age 14, she "fell in love with a 28-year-old man," ran away from home, and lived with him in various places in California for two years, selling drugs and prostituting herself to survive. The boyfriend was physically and emotionally abusive. Appellant admitted long term drug and alcohol abuse. She told the probation officer that she started using drugs when she was about 14 years old, and did so daily, "whatever she can get her hands on."

In April 2014, appellant was arrested in Reno, Nevada; she was reported to have been living in a homeless community, prostituting and engaging in daily drug use. She was returned to her mother's custody, then ran away again. On May 31, she was cited for petty theft (Pen. Code, § 488) in Santa Clara County and placed at a facility, but ran away several hours after being checked in.

On June 10, 2014, appellant's mother reported to the police that appellant had been pounding on the sliding glass door of her home, brandishing a small handgun and demanding money. When she was refused, appellant hit her mother's car with a hard object as she left, damaging the door. Appellant's mother said that appellant had run away from a drug rehabilitation unit in Santa Clara the previous month and had since been living on the streets in Vallejo. Appellant was arrested on June 19, after she was contacted by police officers who found her loitering in an alley with two other people. She appeared to be under the influence of alcohol, denied having identification and gave a false name to the police, tried to run away, and was arrested. Asked again for her real name, she gave her mother's name and birth date. She told nurses at the hospital where she was taken for medical clearance that she had ingested methamphetamine and alcohol prior to being stopped by the police.

On June 20, 2014, the Solano County District Attorney filed a petition alleging that appellant came within the juvenile court's jurisdiction under section 602 in that she had committed one count of vandalism (Pen. Code, § 594, subd. (b)(2)(A), one count of

exhibiting a firearm (Pen. Code, § 417, subd. (a)(2)), and one count of giving false information to a police officer (Pen. Code, § 148.9, subd. (a)). The court referred the case to the Department of Social Services and the probation department for a section 241.1[5] assessment to determine whether the case should proceed under the delinquency or dependency system, and for an evaluation of competency under section 709. On July 23, consistent with the conclusion of the evaluator, the court found appellant competent.

The section 241.1 report recommended that appellant and her family be afforded services through the child welfare department because they did "not meet the criteria for services offered via the probation department." The court ordered county counsel to file a section 300 dependency petition. On July 31, the court dismissed the section 602 petition and found that appellant would be best served under section 300. The court's minute order indicates she was to be picked up by group home staff or a social worker, but she "absconded from CPS placement within just a few hours."

Appellant was subsequently found to be in custody in Shasta County, having been arrested on October 21 for intoxication. On October 23, at the suggestion of the court, the prosecutor re-filed the section 602 petition alleging the three misdemeanor offenses alleged in the June 20 petition. Appellant ran away when the social worker picked her up from Shasta County, and a bench warrant was issued on October 24.

On December 12, appellant was arrested in Shasta County for trespass (Pen. Code, § 602, subd. (o)(2)) and providing a false name to a peace officer (Pen. Code, § 148.9,

---

[5] Section 241.1, subdivision (a), provides:

"(a) Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor. Any other juvenile court having jurisdiction over the minor shall receive notice from the court, within five calendar days, of the presentation of the recommendations of the departments. The notice shall include the name of the judge to whom, or the courtroom to which, the recommendations were presented."

subd. (b)). Shasta County declined to prosecute and appellant was transported to Solano County and booked on the active warrant on December 16. On December 18, the court referred the case for another section 241.1 report. Appellant filed a motion to suppress evidence, arguing that the detention underlying the three misdemeanor counts was unlawfully instituted and prolonged.

On January 12, 2015, in an "addendum/memo to court," the probation officer reported that, after speaking with the social worker, it was agreed it would be in appellant's best interest to afford her the services offered by the probation department. Appellant objected that the memo was inadequate to satisfy the statutory requirement of a section 241.1 report and argued that she should remain a section 300 dependent due to her documented history of abuse, neglect and trauma. After a hearing on January 12, the court held the matter would proceed under section 602, denied appellant's motion to suppress, granted the prosecution's motion to dismiss counts 1 and 2 of the petition, and sustained count 3, giving false information to a police officer.

On February 5, 2015, the juvenile court adjudged appellant a ward of the court and placed her on probation, finding that her welfare required taking custody from her parents and ordering that she be placed in a suitable foster home or institution. Meanwhile, she was committed to juvenile hall. As of February 20, the probation department was still waiting for responses from group homes it had contacted.

On February 27, the probation officer filed a notice of probation violation alleging that appellant had violated the court's February 5 order by refusing to be released to the group home. According to the probation officer's supplemental report, appellant was interviewed on February 24 by a group home that accepted her into their program; appellant agreed this group home would be a good fit for her and she was to be released to the home on February 26. When the probation officer arrived to speak with appellant

just prior to her release, however, appellant refused. She was not released "for fear that she would be combative or run away from group home staff during transport."[6]

On March 10, the Solano County District Attorney filed a section 602 petition alleging one count of misdemeanor obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)) based on her conduct with the probation officer. Appellant filed a demurrer, arguing that a probation violation cannot be charged as a new charge in order to increase confinement time, and asked the court to consider it as a motion to dismiss as well. The demurrer was denied, and the motion to dismiss was denied without prejudice.

At the hearing on March 20, Probation Officer Shannon West testified that when she went to meet with appellant prior to appellant being released to the group home, appellant said that she was going to refuse to go with the group home staff because she had everything she needed in custody, she did not want to be on probation, and her attorney said that if she waited in custody until April, she would go to child welfare and be able to return home. West reminded appellant of their previous conversations, in which appellant had said she wanted to "get her life together," graduate from high school, not be on the streets and stop using drugs, and they discussed appellant's previously expressed fear of being released because it was too early in her recovery. The probation officer urged appellant to give the program a try, but appellant "pretty much just was closed off. She wasn't hearing it. She would shrug her shoulders, say she had everything she needed in custody." Seeing they were getting nowhere, West told appellant that she was preventing her from being able to comply with the court's order and that she would have to "put [appellant] back before the court for a violation" because she could not carry

_____

[6] As described in the probation officer's report, appellant "firmly indicated that she would not go to a group home" and "explained that her attorney told her that if she were to remain in custody until April and 'max out my time' she would be allowed to go back to the [c]hild [w]elfare system." The probation officer reminded appellant about previous conversations in which she had said that she wanted to remain clean and sober, finish school and return home, and that she was "fearful of being released" but "willing to work on herself in the group home." Appellant remained unwilling to be released, saying " 'I have everything I need in here [custody].' " When told her release was planned for shortly after the meeting, appellant "clearly stated she would refuse to be released."

6

out the order. Appellant said, "Do what you've got to do.' " West called the group home to cancel the transportation. She did not let them come and attempt to get appellant into the car because she was concerned that appellant would "outright refuse" or run away. West testified that she would not have appellant "dragged out": "[I]t needed to be an amenable situation. And her willingness for treatment needed to be pretty high and agreeable for me to release her, because she would be released from custody to transportation staff, and I was unsure of what would happen if she was so against going into placement." West told appellant that group home staff were on the way to pick her up but acknowledged that appellant did not disobey a directive to physically go with the group home staff, physically refuse to come out of her room to talk to West, "hold onto a chair," or refuse to interview with the group home.

The court sustained the probation violation and the section 602 petition. At appellant's attorney's request, the court ordered another section 241.1 evaluation and, for disposition, ordered the probation department to look into group homes specializing in victims of sexual exploitation and into placement with appellant's grandmother.

The Solano County Department of Health and Social Services and the probation department filed an "Agreed Joint Assessment Report" recommending that appellant and her family be afforded services solely through the probation department. Appellant was unwilling to go to a group home placement. West had contacted several group homes specializing in trauma and sexual exploitation of children and all had long wait lists. The paternal grandmother wanted to have appellant live with her, but outpatient substance abuse services were assessed to be insufficient and there were concerns about appellant's runaway history and ability to complete treatment in a nonsecure environment. Appellant's mother did not want her at home until appellant " 'gets help.' " The most appropriate placement was deemed to be New Foundations, where she could complete substance abuse treatment, receive counseling, attend school, and begin to formulate plans for the future. According to the 241.1 report, appellant said she began using methamphetamine at age five; when pressed further because this seemed "unbelievable," appellant insisted, saying her use increased to "every day, all day since she was seven

7

years old." She said she began using marijuana at age seven and by age 12 was using heroin every day, as well as "various opiates." She said she consumes alcohol regularly, had used cocaine experimentally, and overdosed on four occasions.

Appellant objected to the 241.1 report and sought a stay of sentence pending appeal, arguing that she should be a section 300 dependent. Appellant noted that aside from providing false information to a police officer, her only alleged crime was the "alleged 148(a)(1) based on her statement that she did not want to go to the group home." Appellant argued that based on her "documented history of abuse, neglect, and trauma, it would be a pure legal fiction to say that [appellant's] dalliance with the court system is based on her own delinquency and not of a systematic failure by both the child welfare departments of various counties and, most notably her parents, to protect her basic human rights."

At the hearing on April 6, 2015, the court held that the case would proceed under section 602, explaining that the attempt to proceed under the dependency system had failed when appellant ran away within hours of placement, and that the services appellant needed were not available in the dependency system. The court continued appellant as a ward and ordered that she be placed at the New Foundations program. Her maximum period of confinement was one year and two months.

Appellant filed a notice of appeal on April 6, 2015.

On April 16, the probation department reported that appellant remained in juvenile hall; there was a waiting list for New Foundations and appellant was expected to enter that program on April 22.

On April 20, appellant filed a petition for writ of supersedeas in this court. We entered a temporary stay of the juvenile court's April 6 order.

At a juvenile court hearing on April 24, the probation officer reported that appellant had refused to enter New Foundations. In light of the temporary stay, the court noted that appellant's custodial time prior to the April 6 court order would expire on April 26, concluded that its earlier general placement order of February 5 was in effect, and directed the probation department to attempt to place appellant in a group home by

8

April 26. If it was unable to do so, appellant would have to be released to her mother or any person authorized by her mother.

In a declaration accompanying the People's opposition to the petition for writ of supersedeas, filed on May 4, counsel stated she had been informed that appellant had been released to her grandmother in Lake County on April 26, then left her grandmother's home on May 2, with her current whereabouts unknown.

On July 2, this court granted the petition for writ of supersedeas, staying the juvenile court proceedings pending resolution of this appeal.

## DISCUSSION

### I.

Appellant contends the evidence was insufficient to support the court's finding that she violated Penal Code section 148, subdivision (a)(1), because she did nothing more than verbally refuse to go to the group home. According to appellant, she had a constitutional right to express her disagreement with the placement, and her "act of stating a preference regarding [her] own placement" did not rise to the level of the criminal offense of resisting or obstructing a peace officer.

The applicable standard of review is the same as for adult criminal appeals. (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328 (*Muhammed C.*).) "In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Reilly* (1970) 3 Cal.3d 421, 425; accord, *People v. Pensinger* (1991) 52 Cal.3d 1210, 1237.)" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) " ' "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'

9

[Citation.]" ' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 577, quoting *People v. Hughes* (2002) 27 Cal.4th 287, 370.)

Penal Code section 148, subdivision (a)(1), provides: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." "The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1108-1109.) "The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence." (*Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1329.)

"Section 148 is most often applied to the physical acts of a defendant. (Cf. *In re Andre P.* (1991) 226 Cal.App.3d 1164, 1175.) For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148. (*People v. Allen* (1980) 109 Cal.App.3d 981, 986-987; see *In re Gregory S.* (1980) 112 Cal.App.3d 764.) But section 148 'is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation.' (*People v. Quiroga* (1993) 16 Cal.App.4th 961, 968 [(*Quiroga*)].)" (*Muhammed C., supra,* 95 Cal.App.4th at pp. 1329-1330.)

In sustaining the petition in the present case, the juvenile court easily found that West was a probation officer, a probation officer is a peace officer (Pen. Code, § 830.5, subd. (a)), and appellant knew West was a probation officer engaged in effecting appellant's placement. Appellant does not dispute these points. As to whether appellant

10

willfully resisted, obstructed or delayed West in the performance or attempted performance of her duties, the court noted that physical conduct was not required and acknowledged that constitutionally protected speech could not be the basis for a violation of Penal Code section 148. The court found that the speech at issue was not constitutionally protected: "I mean, the speech consisted of a refusal to follow a lawful directive that Ms. West was giving her." Viewing West's duties as including effecting the court's order for placement of a ward, the court found that appellant was "defiant" and obstructed West in carrying out the court's order.

Respondent relies upon two cases to illustrate how Penal Code section 148 can be violated without a component of physical resistance. In *Muhammed C.*, *supra*, 95 Cal.App.4th at page 1328, while police officers were processing the car of a person they had arrested and placed in the back of a patrol car, the minor began to speak with the arrestee through the open patrol car window and an officer ordered the minor to step away. The minor continued his conversation and other officers ordered him away; the minor then extended his right hand, palm toward the officers, and an officer told him to step away or he would be taken to jail. (*Ibid.*) As one of the officers began to approach, again ordering the minor to step away, the minor walked toward the officer and was escorted across the street. (*Ibid.*) There, during a brief verbal exchange with a fourth officer, that officer grabbed the minor's hand and announced he was under arrest, the minor pulled his arm away and other officers grabbed him. (*Ibid.*)

Rejecting the argument that the minor's conduct did not amount to a violation of Penal Code section 148 because he did nothing to prevent the detention or arrest of the person in the patrol car and posed no safety threat, the *Muhammed C.* court held that the facts supported a reasonable inference that the minor willfully delayed the officers' performance of duties by refusing to step away from the patrol car. (*Muhammed C., supra,* 95 Cal.App.4th at pp. 1329-1330.) The court explained: "Appellant affirmatively responded to the police orders with defiance. Though appellant has a benign interpretation of his hand gesture, the trial court was entitled to interpret the gesture as one of defiance and we must accept the interpretation in support of the trial court's

11

finding. Similarly, appellant's point that he should not be criminally culpable for doing no more than temporarily distracting the officers from the performance of duties is simply an interpretation of the evidence. The trial court was entitled to conclude that appellant's defiant behavior constituted more than a temporary distraction. That appellant did not pose a safety threat or a threatened interference with the officers' investigation, as appellant urges, is simply circumstantial evidence from which appellant could argue that he did not delay the officers." (*Id.* at p. 1330.) In short, the minor violated Penal Code section 148 by disobeying police orders to step away from the patrol car in a manner that, while involving only a hand gesture communicating defiance and no threat of violence, distracted and delayed the officers from performing their duties.[7]

In *Quiroga, supra,* 16 Cal.App.4th at page 961, police officers investigating a complaint about a noisy party smelled marijuana and saw a person with what appeared to be a marijuana cigarette, then entered and asked for the cigarette. The defendant approached and an officer ordered him to sit back down; the defendant argued, telling the

---

[7] Appellant attempts to distinguish *Muhammed C.* on the basis that, in addition to the hand gesture and refusal to step away from the patrol car, the minor physically pulled his arm out of an officer's grasp. This fact, however, played no part in the court's discussion and was separated in time from the events the court did discuss. As related in the "background" section of the opinion, the minor pulled his arm away from Lieutenant Lumpkin's grasp only *after* three other officers ordered the minor to step away from the patrol car, the minor made the hand gesture, one of the officers began to cross the street toward the patrol car and again ordered the minor to step away, and the minor walked toward the officer and was escorted across the street. In explaining its conclusion that "a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car," the court stated, "three officers ordered appellant five times to step away before appellant complied; they had interrupted processing [the arrestee's] car to attend to appellant; and Officer Baggett specifically affirmed that the elapsed time had delayed the Robinson investigation." (*Muhammed C., supra,* 95 Cal.App.4th at p. 1330.) The facts discussed by the *Muhammed C.* court in upholding the determination that the minor violated Penal Code section 148 were exclusively those related to his conduct *before* he eventually complied with the orders to step away from the car; his physical pulling away occurred after this compliance, in an interaction with a different officer, was never mentioned in the court's discussion.

12

officers they could not come in without a warrant, before complying with the order. (*Id.* at p. 964.) Once sitting, the defendant engaged in some furtive movements and when ordered to put his hands on his lap, was "uncooperative" before "finally" complying. Officers found a plastic bag containing cocaine under the cushion of the couch where the defendant had been reaching, and arrested him. The defendant refused to tell the officer his name both before and after arriving at the jail for booking, acknowledging his identity only when a correctional officer recognized him about 30 minutes after his arrival for booking.

*Quiroga* upheld the conviction under Penal Code section 148 based on the defendant's refusal to provide his name during booking, finding that the refusal "unquestionably served to resist, delay and obstruct the responsible peace officer in the discharge of his duties."[8] (*Quiroga*, *supra*, 16 Cal.App.4th at p. 972.) The defendant's other conduct, however, was not sufficient to support the charge: The court refused to view Penal Code section 148 as criminalizing the failure to comply with police orders "with alacrity," the defendant had a constitutional right to dispute the officer's actions verbally, and his refusal to give his name before arriving at the jail did not thwart or delay his arrest or booking. (*Quiroga*, at p. 966.)

The present case differs from *Muhammed C.* and *Quiroga* in significant details. Appellant told West that she refused to go to the group home when West told her group home staff were on their way to pick her up. But at the point she refused, the directive with which she did not comply—to go to the group home—concerned a future (albeit imminent) situation. The group home personnel had not yet arrived; appellant did not refuse a directive to get into the waiting vehicle. She simply stated her intent to refuse to

---

[8] This would not have been the case if the offense for which the defendant had been arrested had not been a felony, as other statutes address the consequences of nondisclosure in the context of minor offenses and Penal Code section 148 applies only " 'when no other punishment is prescribed.' " (*Quiroga, supra,* 16 Cal.App.4th at pp. 969-971.)

13

go.  This is a significant step removed from disobeying a direct and immediate order to get away from the car (*Muhammed C.*) or provide a name (*Quiroga*) *now*.

The difference is significant because there is no way to *know* (as opposed to assume) that appellant in fact would have refused to get into the vehicle when it arrived. Had West allowed the group home staff to arrive and instructed appellant to leave juvenile hall with them, a direct refusal to get into the waiting vehicle would support finding a violation of Penal Code section 148, subdivision (a)(1).  As it was, appellant's refusal did not actually obstruct West's performance of her duties, although it clearly threatened to do so in the near future.  The refusal did not even delay West, since the group home staff were on their way but had not yet arrived.

Aside from the fact that a statement of *intent* to refuse does not amount to actual refusal, upholding the juvenile court's finding on the facts presented here would effectively condone criminal charges based on a peace officer's subjective evaluation of a subject's oppositional attitude rather than the subject's actual conduct.  In essence, West made a subjective and speculative determination that appellant would disobey her directive (and the court's placement order).  West's testimony demonstrates the speculative nature of her assessment:  She testified that she did not allow the transportation staff to arrive and attempt to have appellant get into their vehicle because she was "concerned that she was going to outright refuse or she was going to run away from the transportation staff. . . .  I was unsure of what would happen if she was so against going into placement."  West was concerned about what appellant *might* do; appellant had not yet done any of the things West feared.  Allowing such speculative assessments to form the basis of criminal charges would create an obvious potential for abuse of law enforcement officers' discretion, as such charges would be easy to make and often difficult to refute.

We are sympathetic with the position West was put in by appellant's behavior. West did not want to force a confrontation; she recognized that the group home placement could not succeed without some degree of acceptance by appellant; and appellant's history demonstrated a clear potential for another runaway situation even if

14

appellant did comply to the extent of leaving juvenile hall with the group home staff. Allowing the situation to play itself out—having the group home staff arrive and waiting to see whether appellant would refuse to get into the vehicle—very likely would have been a waste of time and effort for all involved, and could have resulted in further complications if appellant initially complied and then ran away. But none of these considerations justify criminalizing a minor's expression of opposition that does not in fact amount to resisting, delaying or obstructing a peace officer's performance of duty. West could have allowed the transportation staff to arrive and seen whether appellant in fact refused to leave. This course of action would not have required dragging appellant to the car—the situation West and respondent urge was necessary to avoid: In the face of the waiting transportation, appellant's statement of refusal to comply would have been sufficient to establish the charged violation. Her statements of intent to refuse to comply were not.

We do not mean to condone appellant's conduct. Her characterization of her conduct as simply expressing disagreement with the placement plan, "stating her preference for an option counsel communicated to her" and engaging in a conversation is not persuasive. West was not discussing options with appellant: The court had ordered a placement, and West was there to oversee appellant's release from juvenile hall to the custody of the group home staff. West told appellant that staff was on the way to pick her up and, after attempting to persuade appellant to comply, warned her that she would have to charge appellant with a violation because appellant was preventing her from carrying out the court's order.

Nor are we persuaded by appellant's attempt to liken her refusal to the constitutionally protected speech discussed in *Quiroga, supra,* 16 Cal.App.4th at page 966. (See *Muhammed C., supra,* 95 Cal.App.4th at pp. 1330-1331.) *Quiroga*, in finding that the defendant had a First Amendment right "to dispute Officer Stefani's actions," explained: " '[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.' (*Houston v. Hill* (1987) 482 U.S. 451, 461.) Indeed, '[t]he freedom of individuals verbally to oppose or challenge police action

15

without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.' (*Id.* at pp. 462-463.) While the police may resent having abusive language 'directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment.' (*Duran v. City of Douglas, Ariz.* (9th Cir. 1990) 904 F.2d 1372, 1378.)" (*Quiroga*, at p. 966.) Accordingly, the defendant could not be found to have violated Penal Code section 148 by challenging the officers' entry into the apartment.

Appellant was not disputing the legality of the placement order or West's attempt to effectuate the order. If, as her brief insists, she was "disputing West's choice for her and stating her preference for an option counsel communicated to her"[9] any basis for her belief that she had a choice in the matter was negated when West told her that her refusal was preventing West from implementing the court's order and the basis of a violation. Appellant knew there was a court order and she knew West was there to see it effectuated, and she repeatedly stated her refusal to comply with it.

Nevertheless, we are aware of no case suggesting that the statement of an *intent* to refuse to comply with the directive of a peace officer is sufficient to satisfy the elements

---

[9] As we have described, West related appellant having said that her attorney had told her if she remained in custody until her confinement time ran out in April, she would be put back into the child welfare system and would be able to return home. Noting appellant's attorney's comment at the hearing on February 20, 2015, that she "hope[d] she gets placed as soon as possible," respondent asserts that "either counsel misrepresented her position to the court regarding appellant's placement, or appellant misrepresented counsel's views to the probation officer." The aspersion is unfounded and unnecessary. Appellant's remark had a basis in reality: As the outcome of this case ultimately demonstrated, it was true that if she was not placed in a group home before expiration of her maximum confinement time, appellant would remain in juvenile hall until released home. Counsel may have informed appellant of this without describing it as an "option" appellant could exercise, and there would be nothing inconsistent about counsel hoping for a prompt placement and recognizing the consequence of it not happening. Appellant could have misunderstood what counsel told her. Certainly nothing in the record supports the inference of intentional misrepresentation respondent asks us to draw.

of the criminal offense defined in Penal Code section 148, subdivision (a).  Further, if the facts here *are* sufficient, it is difficult to imagine what refusal to follow the directive of a probation officer (or, say, a corrections officer, who is also a peace officer under Pen. Code, § 830.5, subd. (a)) would not constitute a criminal offense.  Even a comparatively minor refusal to comply could result in the delay or obstruction of a peace officer's ability to perform his or her duties.

In sum, appellant's behavior was oppositional and impermissible; even she does not suggest it did not amount to a probation violation.  But it did not rise to the level of the crime of resisting a peace officer.[10]

## II.

Appellant additionally argues that the juvenile court abused its discretion in terminating her status as a dependent under section 300 and adjudging her a ward under section 602.  As a general rule, a child who qualifies as both a dependent and a ward of the juvenile court cannot be both.  (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1505.)  "We review the juvenile court's determination under section 241.1 for abuse of discretion.  (*In re Joey G.* (2012) 206 Cal.App.4th 343, 346 . . . .)  'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.'  (*Ibid*.) Throughout our analysis, we will not lightly substitute our decision for that rendered by the juvenile court.  Rather, we must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings where there is substantial evidence to support them.  (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)"  (*In re M.V.*, at pp. 1506-1507.)

---

[10] Having reached this conclusion, it is not necessary for us to address appellant's second contention, the court should have dismissed the petition in "the interests of justice and the welfare of the person who is the subject of the petition" (§ 782) because the petition impermissibly increased her maximum confinement time from six months to one year and two months.

Appellant contends the juvenile court abused its discretion in treating her as a delinquent whose primary problem is substance abuse rather than as victim of abuse and sexual exploitation. Quoting the juvenile court's statement that she had been "abusing drugs her whole life, which has led her to the unfortunate circumstances of being yet another victim on the streets," appellant argues that she did not start using drugs until she was 12 years old, after the first time she was raped, and that the court improperly blamed her for her own victimization rather than seeing her as the victim of her parents, the rapist, the 28-year-old she ran away with, and whoever supplied her with drugs.

The court considered the question of which system this case should proceed under on several occasions. The first section 241.1 report recommended providing services through the child welfare department and the court dismissed the section 602 petition, finding appellant would be best served under section 300. Appellant absconded from her placement within a few hours.

After appellant was arrested in Shasta County for intoxication, the court suggested the prosecutor re-file the section 602 petition. Appellant ran away when the social worker picked her up from Shasta County and was later returned to Solano County after another arrest. The court referred the case for another section 241.1 assessment and the probation officer reported in an "addendum/memo to the court" that the probation officer and social worker agreed it would be in appellant's best interests to offer services through the probation department "considering the totality of the circumstances."[11] The court held the case would proceed under second 602. Finally, after the court sustained the second section 602 petition, the court obtained another section 241.1 assessment. The joint recommendation was to proceed under section 602 because the "minor's delinquent behavior, poor decision making, including but not limited to her runaway behaviors, and substance abuse issues are the primary treatment concerns in this case" and the most appropriate placement was New Foundations, a secure environment in which she could

---

[11] As indicated above, appellant objected that the memo was inadequate to satisfy section 241.1, and that she should remain in the dependency system due to her history of abuse, neglect and trauma.

18

"complete substance abuse treatment and receive additional individual counseling to address issues related to trauma," as well as attend school and "begin to formulate a plan for her future regarding completing her high school education."

Appellant complains that the court put too much focus on her substance abuse and too little on her physical abuse and exploitation. She notes that the court never addressed section 300, subdivision (b)(2), which includes within the definition of a dependent child of the court "a child who is sexually trafficked, as described in Section 236.1 of the Penal Code, or who receives food or shelter in exchange for, or who is paid to perform, sexual acts described in Section 236.1 or 1165.1 of the Penal Code, and whose parent or guardian failed to, or was unable to, protect the child . . . . These children shall be known as commercially sexually exploited children."

The court's remarks make clear that it did not ignore appellant's traumatic history. Describing the case as "heartbreaking," the court stated: "I don't think there's anybody in this courtroom who would disagree that she's the victim. [Appellant] is the victim. She's the victim of a household that gave her no real advantage. Yes, indeed, she's got a restraining order against her father. And, yes, indeed, her mother essentially has abandoned her. [¶] According to her own account, she's been abusing drugs her entire life, which has led her to the unfortunate circumstances of being yet another victim on the streets. She hasn't been in school in two years. She certainly doesn't have a normal life. [¶] . . . [¶] And, yes, indeed, I understand why she would like to be a 300, and why the 300 system, at least on paper, looks like that would be a fit. But we found out very quickly that it's not. We tried that, and she ran within eight hours. And I can only conclude that the reason that she runs—I mean, is she really running so she can be out on the streets and be victimized more? I don't think so. I think she's running for the drugs, and the drugs lead her to the circumstances that lead her to be a victim again. And what I'd like to do is try to stop this circle that she's in and give her an opportunity to find her way. [¶] I don't think we can do it with the 300 system. I agree with the report and recommendation jointly made. [¶] And, yes, indeed, as far as her grandmother is concerned, yes, that is someplace that I would like to see her end up. But as of right now,

19

that is not going to give her the help that she needs  [¶]  I think her problems are primarily drug-related.  I think that this is really the only realistic way that we can help her.  I recognize that she doesn't want that.  I recognize that she views it as a form of punishment.  [¶]  But I want to assure her that that's not my intention, because I do believe that she is the victim.  I want to get her some help, the help that she needs."

We do not read the court's remarks as blaming appellant for her delinquent behavior or as minimizing her victimization.  Rather, we understand both the joint recommendation in the 241.1 report and the court as recognizing that both appellant's delinquent behavior and her substance abuse were entrenched:  She was in desperate need of substance abuse treatment, and, given her history of running away, she was not going to get it in a nonsecure environment.  The point was perhaps best made by appellant herself after the court explained the reasons for keeping her within the section 602 system and sending her to New Foundations:  When the court told appellant it hoped she would be able to take advantage of the opportunity to change her life, appellant responded, "The bottom line is, no matter what you guys do, I'm still going to do what I want to do at the end of the day.  If I want to go out and get high, then I'll go out and get high."  Appellant was already 17 years old, she was not willing to go to a group home, and the group homes specializing in trauma and sexual exploitation of children had long wait lists.  The court's conclusion that appellant was in need of services available only in the section 602 system, not in the dependency system, was not only within its discretion but inescapable.

## DISPOSITION

The orders are reversed and the matter remanded to the juvenile court for proceedings consistent with the views expressed herein.

 

                             _____

                             Kline, P.J.

We concur:

_____

Stewart, J.

_____

Miller, J.

*In re Amanda A.* (A144797)

21

Trial Court:                               Solano County Superior Court

Trial Judge:                              Hon. D. Scott Daniels


Attorney for Defendant and Appellant:     By appointment of the Court of Appeal
                                          Under the First District Appellate Project
                                          Maureen M. Bodo

                                          Lesli M. Caldwell
                                          Solano County Publice Defender

                                          Cheryl M. McLandrich
                                          Deputy Public Defender

Attorneys for Plaintiff and Respondent:   Kamala D. Harris
                                          Attorney General of California

                                          Gerald A. Engler
                                          Chief Assistant Attorney General

                                          Jeffrey M. Laurence
                                          Acting Senior AssistantAttorney General

                                          Donna M. Provenzano
                                          Supervising Deputy Attorney General

                                          Joan Killeen
                                          Deputy Attorney General