Filed 3/16/16  In re Alberto B. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re ALBERTO B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F071182 |
| Plaintiff and Respondent, | (Super. Ct. No. 15CEJ600058-1, 1A) |
| v. | |
| ALBERTO B., | **OPINION** |
| Defendant and Appellant. | |

**THE COURT**\*

APPEAL from an order of the Superior Court of Fresno County.  Gregory T. Fain, Judge.

Robert F. McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Gomes, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

After a contested hearing, the juvenile court sustained allegations that appellant Alberto B. had violated Penal Code[1] section 415, disturbing the peace; section 289, subdivision (a)(1)(A), forcible digital penetration; section 286, subdivision (c)(2)(A), forcible sodomy; and section 234.4, subdivision (a), sexual battery of a restrained person. Alberto challenges the sufficiency of the evidence to support the true findings on the three sexual offenses. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL SUMMARY

On May 20, 2014, Officer Adam Edgington of the Willows Police Department in Glenn County was dispatched to pick up a minor, 16-year-old Alberto, who had run away from home. Edgington located Alberto and transported him home to the residence of his brother and sister-in-law, David and Ashley H. When they arrived and David came out to meet them, Alberto took off his shirt, held up his fists, used foul language, and became aggressive. Edgington stepped in between Alberto and David. A juvenile wardship petition charging Alberto with disturbing the peace was filed in Glenn County.

In October of 2014, twins Vanessa and Angelica M. were celebrating their birthday with friends at home. Alberto, Anisa, Sheri, James, Tony, Rebecca, Joseph F., and 14-year-old Jessica were present for the party. The twins wanted to drink alcohol, but their mother said they would have to leave the house. Nineteen-year-old Joseph Shiavoni came over and told the group they could drink at his house. Shiavoni drove the group to a Wal-Mart, where James shoplifted alcohol and Shiavoni purchased cups.

The group was drinking rum, whiskey, vodka, and "moonshine." Jessica consumed a "mixed drink" and between three and five shots of alcohol. She became ill and vomited.

---

[1] References to code sections are to the Penal Code unless otherwise specified.

Vanessa and others left the party around 10:00 p.m. At around 11:30 p.m., Alberto, Jessica, Tony, Angelica, and Shiavoni walked back to Angelica's house. Angelica was too intoxicated to walk without assistance; Jessica could walk, but had difficulty forming words or conversing. They climbed through the window of Angelica's room to get into the house.

Jessica borrowed pajama shorts and a top from Vanessa and climbed into Vanessa's bed to sleep; Vanessa was already asleep in the 8 foot wide bed. Jessica was wearing underwear and the pajama shorts, a tank top, and a bra. She and Vanessa slept back-to-back in the bed, with Vanessa on the outside and Jessica facing a wall. Sheri, Tony, Vanessa, and Jessica were in the bedroom.

At some point after 1:00 a.m., Alberto stripped down to his basketball shorts and lay down on the floor next to Vanessa's bed. Alberto was very talkative and complained the floor was uncomfortable; Vanessa told him he could lie across the end of the bed near their feet. Alberto lay on the bed and touched Jessica's calves and thighs with his hand.

Alberto moved up on the bed between Jessica and the wall. As he did so, Jessica turned her back to the wall and faced Vanessa. Alberto continued to touch Jessica and kissed her back and upper arms. She "tensed" and did not "know how to react to that." When Alberto pulled down her pajama shorts, she did "[n]othing." He then put one finger inside her vagina.

Jessica then felt Alberto's erect penis pushing against her anus. She felt an uncomfortable pressure as Alberto rubbed his penis against her anus, but she did not feel the penis inside her anus. She felt "bad" and was "still scared." Jessica tried to pull up her shorts, but Alberto stopped her. He grabbed her face and pulled it toward his own stating, "I know you want it." Jessica pulled her face away.

Alberto got off the bed and onto the floor, telling Jessica to join him. Jessica ignored him and pressed her body up against the wall. Alberto said, "Are you kidding me?" He climbed onto the bed on Vanessa's side, reached over Vanessa, and grabbed

3.

Jessica's breasts. Jessica grabbed Alberto's hand and "threw it back at him." Alberto did not attempt to touch Jessica again and eventually she fell asleep.

Alberto was five feet, three inches tall and weighed around 160 pounds at the time of the assault. Vanessa was in the same bed as Jessica and Alberto the entire time the assaults took place.

The next morning, Jessica tried to tell Vanessa what had happened, but Alberto walked into the room. Jessica stopped talking. Jessica told her parents about the incident that night and reported it to law enforcement two days later.

When Jessica first spoke to officers, she lied and stated she did not know Alberto's identity and did not disclose they had all been drinking alcohol. Jessica did not want to get anyone in trouble; she was ashamed about "the whole night;" and did not want her parents to know she had been intoxicated. The assault made her feel "small and degraded."

A second juvenile wardship petition was filed in Glenn County charging Alberto with forcible digital penetration, sexual penetration of an intoxicated person, forcible sodomy, and sexual battery of a restrained person.

Alberto testified on his own behalf. He denied touching Jessica. He claimed he lay on the floor next to Vanessa's bed the entire night and never touched Jessica.

According to Jessica, she had marks on her body after the assault, which she described as "hickies." The hickies were on the back of her neck, her upper back, and on her arm. She testified she had a total of three hickies, which were very light after the incident and one had faded completely away by the time she told police. Jessica stated a hickey was not a bite mark; she had no bite marks. The parties stipulated that a hickey "is a suction mark on [a] person's skin … usually done … in an act of sexual pleasure."

Jessica acknowledged she never said "no" or "stop" to Alberto at any time while he was touching her. She said she "tried to lay on my stomach to stop him from touching me." She testified she was "scared" when she felt Alberto's penis pressing against her

4.

anus and she felt "trapped." Jessica estimated the whole incident lasted more than ten minutes, but less than 30 minutes.

The juvenile court found true the allegations of disturbing the peace, forcible digital penetration, forcible sodomy, and sexual battery of a restrained person. The allegation of sexual penetration of an intoxicated person was found not true. The court in Glenn County then transferred the matter to Fresno County, Alberto's county of legal residence, for disposition.

On March 10, 2015, Alberto was placed on probation, with a commitment to the Juvenile Justice Center for 365 days, and a maximum available confinement of 10 years and 1 month.

### DISCUSSION

Alberto contends the evidence is insufficient to sustain the true findings of forcible digital penetration, forcible sodomy, and sexual battery of a restrained person. Consequently, he contends the disposition order must be reversed as to these findings and the matter remanded for a new disposition hearing.

### I. Standard of Review

The applicable standard of review is the same for juvenile adjudications as for adult criminal appeals. (*In re Amanda A.* (2015) 242 Cal.App.4th 537, 545 (*Amanda A.*).) The standard of review on appeal for sufficiency of the evidence is well-settled; this court reviews "the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.) "The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Amanda A., supra,* 242 Cal.App.4th at p. 545.)

Reversal for insufficiency of the evidence is not warranted unless it appears "'that upon no hypothesis whatever is there sufficient substantial evidence'" to support the verdict.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

## II. Sufficiency of the Evidence

We address separately the challenge to the sufficiency of the evidence of forcible digital penetration, forcible sodomy, and sexual battery of a restrained person.

### *Force, Duress and Fear*

The force necessary to find that a sexual offense is aggravated is the force sufficient "to overcome the will of the victim to thwart or resist the attack."  (*People v. Griffin* (2004) 33 Cal.4th 1015, 1027 (*Griffin*).)  Force sufficient to establish an aggravated sexual assault of a child is "force which is sufficient to overcome the victim's will."  (*In re Asencio* (2008) 166 Cal.App.4th 1195, 1200.)  The force need not cause a physical harm or injury.  (*People v. Cicero* (1984) 157 Cal.App.3d 465, 475 (*Cicero*), disapproved on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.)

"Duress" is a direct or implied threat of force, violence, danger, or retribution "'sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or; (2) acquiesce in an act to which one otherwise would not have submitted.'"  (*People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1578-1579 (*Wilkerson*).)  Physical force need not be present in situations of duress. (*People v. Cardenas* (1994) 21 Cal.App.4th 927, 939.)  The very nature of duress involves psychological coercion.  (*People v. Senior* (1992) 3 Cal.App.4th 765, 775.)

The California Supreme Court has held that "[s]udden unconsented-to groping, disrobing, and ensuing sexual intercourse while one appears to lie sleeping is an appalling and intolerable invasion of one's personal autonomy that, in and of itself, would reasonably cause one to react with fear."  (*People v. Iniguez* (1994) 7 Cal.4th 847, 858 (*Iniguez*).)

### No Forcible Digital Penetration

Section 289, subdivision (a)(1)(A) provides that "[a]ny person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison …." Sexual penetration is defined as "the act of causing the penetration, however slight, of the genital or anal opening of any person … for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) A "foreign object, substance, instrument, or device" includes any part of the body, except a sexual organ. (§ 289, subd. (k)(2).)

Here, Jessica testified that she and Vanessa were in bed; the room was "pitch black dark." Alberto came into the bedroom and was very talkative; he complained about the hardness of the floor. Jessica was awake and aware when Alberto started touching her legs, although she "didn't do anything because I didn't know what was happening." She felt Alberto move around on the bed and she turned her back to him; Alberto was against the wall and Jessica was facing Vanessa. When Alberto began kissing her back, she did not "know how to react to that." When Alberto pulled her shorts down, she did "[n]othing." Alberto then placed one finger inside her vagina.

Jessica did not testify that she felt threatened, was fearful, or was restrained prior to or at the time Alberto digitally penetrated her. She made no attempt to move his hand away from her prior to or while he digitally penetrated her, unlike at a later point in time when she pushed his hand away and he ceased touching her. She made no attempt to pull up her underwear and shorts at this time; she did so only after he attempted anal penetration with his penis. Jessica acknowledged that no one stopped her from getting out of the bed. There were a total of five people in the bedroom when the incident occurred; two adults were in another bedroom in the house.

Jessica never said "no" or "stop" at any time to Alberto or outwardly indicated resistance in any way. There is not substantial evidence of the use of force "to overcome the will of the victim to thwart or resist the attack;" there simply was no force used by Alberto. (*Griffin, supra,* 33 Cal.4th at p. 1027.) We similarly find no duress, as duress connotes an implied or express threat of force or violence, of which none is disclosed by the record. (*Wilkerson, supra,* 6 Cal.App.4th 1571, 1579.)

As for fear, Jessica did not testify she was fearful at or prior to the digital penetration; she "didn't know how to react" and did "[n]othing." We recognize that the People assert fear was present based upon the holding of *Iniguez, supra*, 7 Cal.4th at p. 847; however, that case does not support the People's position.

In *Iniguez,* the California Supreme Court stated that a fear analysis is comprised of both a subjective and an objective component. (*Iniguez, supra*, 7 Cal.4th at p. 856.) The subjective component "asks whether a victim genuinely entertained a fear of immediate and unlawful bodily injury sufficient to induce her to submit" to sexual activity against her will. (*Ibid.*). The objective component "asks whether the victim's fear was reasonable under the circumstances, or, if unreasonable, whether the perpetrator knew of the victim's subjective fear and took advantage of it." (*Id.* at p. 857.)

Jessica was in a room with three other friends besides Alberto; two adults were close by in the home. Vanessa was in the same bed and responsive when spoken to, as demonstrated by her answering Alberto when he asked to lie on the bed. Alberto did not climb onto the bed without permission and start to attack Jessica while she slept; Alberto woke Vanessa and Jessica up by talking about the hardness of the floor and asking permission to climb onto the bed. Only after Jessica was awake and Alberto was on the bed did he commence touching Jessica by stroking her leg.

From an objective standpoint, any fear of an immediate risk of unlawful bodily injury that Jessica might have entertained when Alberto started touching her was not reasonable under the circumstances; he had neither said nor done anything to suggest

8.

such harm was imminent. (*Iniguez*, *supra*, 7 Cal.4th at p. 856.) Moreover, nothing Jessica did or said could have communicated any subjective fear to Alberto, for him to use this to his advantage. (*Ibid.*)

Consequently, we will reverse the true finding on the section 289, subdivision (a)(1)(A) offense because there is no substantial evidence of force, violence, duress, menace, or fear of immediate bodily harm used to accomplish the offense. Pursuant to section 1181, subdivision (6), we will modify the offense to a true finding of a violation of section 289, subdivision (h).

### *Offense Was Attempted Forcible Sodomy*

Alberto contends there is insufficient evidence to support the forcible sodomy conviction for two reasons: (1) lack of any evidence of penetration; and (2) insufficient evidence of any use of force. We conclude there is insufficient evidence to establish penetration.

Sodomy is defined as "sexual conduct consisting of contact between the penis of one person and the anus of another person. Any sexual penetration, however slight, is sufficient to complete the crime of sodomy." (§ 286, subd. (a).) Forcible sodomy is the commission of sodomy by means of force, violence, duress, menace, or fear of immediate bodily injury. (§ 286, subd. (c).)

The record established that Alberto touched Jessica's buttocks with his erect penis, while Jessica was facing Vanessa. Jessica testified that Alberto "turned my butt" before he attempted to sodomize her. Jessica was asked if she felt the erect penis inside her anus, to which she responded "No." She said she felt "pressure" on her anus and she responded by trying to pull her shorts up and shifting to get away. When Jessica attempted to pull away from Alberto, he put his hand on her cheek and turned her head toward him. Alberto told Jessica to get onto the floor with him and stated "that he had done that with many girls before." Jessica declined to get on the floor with him. Jessica

9.

also testified that after the incident, she had no discomfort in the areas that were touched by Alberto.

Penetration may be established by circumstantial evidence. (*People v. Adams* (1993) 19 Cal.App.4th 412, 429.) In those cases that have found evidence of slight penetration, courts have noted testimony from the victim that the defendant "tried to enter a little bit, but it hurt a lot" and circumstantial evidence of rectal pain and/or bleeding. (*People v. Gonzalez* (1983) 141 Cal.App.3d 786, 790.) Pain is circumstantial evidence of penetration. (*Ibid.*) Lack of trauma to the rectum, however, does not preclude a finding the victim was sodomized. (*People v. Kraft* (2000) 23 Cal.4th 978, 1059-1060.)

Here, there was no testimony from Jessica that Alberto succeeded in penetrating her anus with his penis; rather, her testimony was the opposite in that she denied any penetration occurred. As soon as she felt pressure on her anus, she shifted and pulled away, while trying to pull up her pajama shorts. She did not report any pain or discomfort; there was no evidence of rectal tearing or bleeding. The testimony of the victim is that penetration did not occur; there is no circumstantial evidence of pain, discomfort, bleeding, or trauma that would establish penetration. We conclude the evidence is insufficient to support a finding that penetration, even slight penetration, occurred.

There is, however, evidence to support the finding that Alberto used force in an attempt to commit sodomy. Alberto physically turned Jessica's "butt" in order to position her for sodomy; when she attempted to pull away, he grabbed her face and turned it toward him; Jessica testified she was "scared." The force necessary to find that a sexual offense is aggravated is only that force sufficient "to overcome the will of the victim to thwart or resist the attack." (*Griffin, supra,* 33 Cal.4th at p. 1027.) The force need not cause a physical harm or injury. (*Cicero, supra,* 157 Cal.App.3d at p. 475.)

Pursuant to section 1181, subdivision (6), we will reduce the offense to a true finding of attempted forcible sodomy, to conform to the evidence.

10.

### *Sexual Battery of a Restrained Person*

A true finding was made that Alberto had committed sexual battery of a restrained person, a violation of section 243.4, subdivision (a). Alberto contends there is not substantial evidence he unlawfully restrained Jessica. We disagree.

A person who touches an intimate part of another person, while that person is unlawfully restrained, and if the touching is against the will of the person touched, and the touch is committed for sexual gratification, then the defendant has committed sexual battery of a restrained person. (§ 243.4, subd. (a).) "Touch" means a physical touch, whether accomplished directly or through clothing, and an "intimate part" includes the female breast. (§ 243.4, subds. (f) and (g)(1). A violation of section 243.4, subdivision (a) does not require a physical restraint. (*People v. Arnold* (1992) 6 Cal.App.4th 18, 28 (*Arnold*).) A person is unlawfully restrained "when his or her liberty is being controlled by words, acts or authority of the perpetrator." (*Ibid.*)

Jessica testified that after Alberto "turned my butt" she felt "trapped." While she was in this position, Alberto wrapped his arm around her and grabbed her left breast with his hand. Jessica tried to pull away. A reasonable inference from this evidence is that Alberto had unlawfully restrained Jessica at the point in time he touched an intimate part of her body, her left breast, for his own sexual gratification. (*Arnold*, *supra,* 6 Cal.App.4th at p. 28.)

### DISPOSITION

The true finding for violating section 289, subdivision (a)(1)(A), forcible digital penetration is reversed and pursuant to section 1181, subdivision (6), we make a true finding of a violation of section 289, subdivision (h). The true finding for a violation of 286, subdivision (c)(2)(A), is modified pursuant to section 1181, subdivision (6), to reflect a true finding for an *attempted* violation of section 286, subdivision (c)(2)(A). In all other respects, the jurisdiction order is affirmed. The matter is remanded to the Fresno County Juvenile Court for a new disposition hearing.

11.