Filed 4/28/16  In re S.N. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re S.N., a Person Coming Under the Juvenile Court Law.** | |
| **THE PEOPLE,**     **Plaintiff and Respondent,** **v.** **S.N.,**     **Defendant and Appellant.** | **A145354** **(San Mateo County Super. Ct. No. 83918)** |

The juvenile court found true misdemeanor allegations S.N. (the minor) possessed graffiti materials with the intent to commit vandalism (Pen. Code, § 594.2, subd. (a))[1] and willfully and unlawfully resisted, delayed, or obstructed a peace officer (§ 148, subd. (a)(1)).  The court adjudicated the minor a ward of the court (Welf. & Inst. Code, § 602) and placed him on probation with various terms and conditions, one of which precluded him from possessing "graffiti materials" except under specified circumstances.

The minor appeals.  He contends: (1) the prosecution did not rebut section 26's presumption that a person under the age of 14 is incapable of committing a crime; (2) insufficient evidence supports the finding he possessed graffiti materials with intent to commit vandalism in violation of section 594.2, subdivision (a); (3) the prosecution did

---

[1]     Unless noted, all further statutory references are to the Penal Code.

1

not establish he "'willfully delay[ed]'" in violation of section 148, subdivision (a)(1); and (4) the probation condition prohibiting him from possessing "graffiti materials" is unconstitutionally vague because it lacks a knowledge requirement. We modify the probation condition but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2014, the People filed a Welfare and Institutions Code section 602 petition alleging the minor committed felony vandalism (§ 594, subd. (b)(1) (Count 1)), misdemeanor possession of graffiti materials with the intent to commit vandalism (§ 594.2, subd. (a) (Count 2)), and misdemeanor resisting, delaying, or obstructing a police officer (§ 148, subd. (a)(1) (Count 3)). The petition alleged the offenses occurred in June 2014, when the minor was 13 years and 6 months old.[2]

*Prosecution Evidence*

On a June 2014 afternoon, San Mateo Police Officer Marcelo Altwer was in uniform on his police motorcycle near the Hayward Park Caltrain Station when he saw two young men — later identified as the minor and J.V. — sitting on a bench. As Officer Altwer "got closer," he saw the boys "diligently writing" on the bench. The boys did not see Officer Altwer: they were bent over, "busy writing their names or writing something on the bench." After confirming "they were writing" on the bench, Officer Altwer yelled, "'Hey, you need to stay there. I need to talk to you.'"

In response, the boys got up from the bench and ran away from Officer Altwer, toward the train station. Officer Altwer followed the boys on his motorcycle; using his public address system, he ordered them to stop. The boys continued running for between one and two minutes, "constantly looking back to see" whether Officer Altwer was "getting closer[.]" Finally — after running "several hundred feet" across the station platform and toward the road — the boys stopped near a fence. Officer Altwer ordered

---

[2] In March 2015, the People filed a second section 602 petition alleging the minor committed misdemeanor vandalism at Gap and Pottery Barn in October 2014 (§ 594, subd. (b)(2)). The People later dismissed the petition.

the boys to sit and they complied. J.V. was "very cooperative." Officer Altwer patsearched J.V. and he sat down.

The minor was wearing a backpack. Officer Altwer wanted to "look inside . . . [to] make sure there weren't any weapons[,]" but the minor refused to be patsearched. He repeatedly said, "'You're not searching me. You're not touching me'" and "'You're not checking me." When Officer Altwer reached over to grab a backpack shoulder strap, the minor "leaned backwards" and crossed his arms to make it more difficult for Officer Altwer to remove the backpack. Officer Altwer told the minor he needed to "pat him down and check the backpack." The minor responded, "'You're not checking me. You're not checking my backpack.'" At that point, other officers — including Officers Haddad and Heinsma — arrived. Officer Altwer did not realize Officer Haddad had arrived; he was distracted by the minor's "aggressive behavior."

Officer Altwer grabbed a shoulder strap and the minor's right arm; Officer Heinsma grabbed the minor's left arm. In response, the minor became "very belligerent, very loud saying, '[Y]ou're not checking me. You're not checking my backpack.'" As Officer Altwer tried to remove the backpack, the minor yelled, "'You're not fucking checking me. You're not checking my backpack.'" One of the straps came off of the minor's shoulder, but the minor "was still resisting" and "struggling" with the officers. The situation was "similar to a tug-of-war[.]" The officers "weren't sure what was in the backpack and why somebody of his age would be so resistive to [the officers] just checking the backpack." Officer Altwer continued to explain why the officers needed to conduct a patsearch but the minor "continued to resist." J.V. told the minor, "'You've got to calm down.'"

The three officers brought the minor to the ground and tried to handcuff him. Officer Haddad told the minor, "'Stop resisting'" and the minor eventually relented, saying "'Okay. Okay.'" The minor's refusal to show the officers his hands and his refusal to cooperate "was of grave concern" to Officer Haddad. Officer Haddad handcuffed the minor and removed his backpack. The backpack contained what is "commonly referred to as a slap tag" with the word "spit" on it. "[S]erial vandalizers"

3

take shipping label stickers from the post office and "draw their monikers or tag whatever they would normally [ ] so that when they do decide to deploy the sticker[,] the vandalism is already pretty much done." The minor's backpack also had "practice drawings on a piece of paper[,]" a latex glove, and two pens.

Officers Altwer and Haddad returned to the bench where Officer Altwer first saw J.V. and the minor. The officers saw graffiti — including the word "spit" — in white ink on the bench and a nearby garbage can. They also found a white pen behind the bench.

*Motion to Dismiss and Officer Haddad's Additional Testimony*

At the conclusion of the prosecution's case-in-chief, defense counsel moved to dismiss (Welf. & Inst. Code, § 701.1), claiming the prosecution failed to rebut the presumption of incapacity in section 26. Defense counsel argued the prosecution did not establish the minor was "capable [of] knowing the wrongfulness of his conduct and capable of committing a crime. Because of his age, he was 13 years old, it's presumed he does not."[3] The prosecution recalled Officer Haddad.

Officer Haddad testified he conducted a *Gladys R.* inquiry to determine whether the minor knew right from wrong. Officer Haddad asked the minor his age, what school he attended, and his grade. The minor told Officer Haddad he was 13 and in eighth grade at Burlingame Intermediate. When Officer Haddad asked the minor, "'Do you know the difference between doing something that is right and doing something that is wrong'" the minor responded, "'Yes.'" The prosecutor asked Officer Haddad the following questions:

"Q. Did you ask the minor to tell you something that he knows is wrong to do?

"A. Yes.

"Q. How did he respond? . . .

---

[3] Under section 26, children under the age of 14 are incapable of committing a crime "in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." Juvenile courts must "consider whether a child appreciates the wrongfulness of [his] conduct in determining whether the child should be declared a ward under [Welfare and Institutions Code] section 602." (*In re Gladys R.* (1970) 1 Cal.3d 855, 858, fn. omitted (*Gladys R.*).)

4

"A.     He answered, 'With graffiti.'

"Q.     Did you ask him to tell you something that he knows is right to do?

"A.     Yes.

"Q.     What did he say?

"A.     'Do graffiti on your own stuff.'

"Q.     Did you ask him to tell you what happens to him at home if he does something that is wrong?

"A.     Yes.

"Q.     What did he say?

"A.     He said that he would be grounded.

"Q.     Did you ask him to tell you at school what happens if he does something that is wrong?

"A.     Yes.  He said that he would get detention.

"Q.     Did you ask him if his mother or father punishes him for doing something that they have told him is wrong to do?

"A.     Yes.

"Q.     Did you ask him questions to determine if he knew it was wrongful to commit the acts?

"A.     Yes.

Officer Haddad *Mirandized* the minor and then questioned him about the June 2014 incident.  The colloquy between the prosecutor and Officer Haddad continued:

"Q.     Did you then begin to ask him about the offense?

"A.     Yes.

"Q.     What did you ask him?

"A.     Well, I asked the general . . . what happened, what was going on.  And he denied taking any part in the graffiti. . . .

"Q.     Did he tell you anything about [J.V.] running?

"A.     Yes.

"Q.     What did he tell you about that?

"A.    He said that he saw [J.V.] begin running, so he began running as well.

"Q.    Did he tell you who was responsible for the graffiti?

"A.    Yes.  He said that [J.V.] was.

"Q.    He told you that he did not do any tagging?

"A.    Correct.

"Q.    Did you ask him about the backpack containing the marker and rubber gloves?

"A.    Yes. . . .

"Q.    What did he say? . . .

"A.    He said that the pens and the glove and the tags were not his.

"Q.    Did he tell you anything about the backpack, whether that was his or not?

"A.    No. . . .

"Q.    Did it appear to you that he understood your questions?

"A.    Yes.

Defense counsel argued Officer Haddad's testimony did not establish the minor knew "the difference between right and wrong."  The court denied the motion to dismiss, noting "I disagree . . .  It is all right to do graffiti on your own property.  I think that does demonstrate a clear distinction between right and wrong on his part since he demonstrated an instance in which graffiti is allowable."

Defense counsel then moved to dismiss all three allegations for insufficient evidence.  The court granted the motion to dismiss Count 1, the vandalism charge, but denied the motion to dismiss Count 2, concluding there was "sufficient evidence of the various materials in the backpack indicating possession with intent" in violation of section 594.2.  The court also declined to dismiss Count 3, explaining there was sufficient evidence the minor willfully and unlawfully resisted, delayed, or obstructed a peace officer in violation of section 148.

*Jurisdiction and Disposition*

At the conclusion of the jurisdictional hearing, the court found the minor possessed graffiti materials with the intent to commit vandalism (§ 594.2, subd. (a)

6

(Count 2)) and willfully and unlawfully resisted, delayed, or obstructed a peace officer (§ 148, subd. (a)(1) (Count 3)).  The court explained, "I will start with Count 1 which I have stricken. [¶] However, I did accept the officers' testimony.  I do believe the officers' testimony that [the minor] was around the scene of the vandalism that was occurring.  What's unclear is exactly what his participation was.  But he was there.  He was around it.  He was doing some things.  I think that's part of the circumstances of the case.  Although, it doesn't in my mind rise sufficiently to sustain Count 1 as I already indicated. [¶] But that combined with the writing materials, the glove, the, . . . things that are in the backpack, I think are circumstantial evidence of the purpose for which those things were possessed.  Yes, . . . they are certainly capable of innocent explanation, . . . but they are also capable of being used improperly.

"I don't see anything that's been brought to my attention to suggest that this was a school backpack.  There's no reference to any school materials, school books, school papers. [¶] It does appear to me . . . materials which were being used for the purpose of committing vandalism.  And, in fact, that's supported by the circumstances under which it all came to police officers' attention where [the minor] . . . was involved to some level in a situation that involved vandalism.  Even if I've chosen not to sustain . . . that specific charge, it still has circumstantial effect. [¶] So I think there is evidence to support Count 2 beyond a reasonable doubt.

"As to Count 3, I don't know that I even need to get to the whole struggle over the backpack.  Although, if I do, I would still accept the fact that [the minor] was resisting. . . . But for the purposes of the trial, I don't think we even need to reach that point necessarily because his running is resisting.  It was not an incidental running of a few feet or a reaction for a second or two that he quickly moved past.  He ran for what's estimated to be something in the range of a minute . . . give or take a few seconds. . . .  But either way, that's a substantial amount of resisting. [¶] So while I actually think he continued to resist over the backpack, the cleaner evidence, if you will, is the running, which in itself establishes Count 3.  Therefore, I sustain the petition as to Counts 2 and 3."

7

The dispositional report recommended supervised probation (Welf. & Inst. Code, § 725, subd. (a)) with several conditions, including a condition the minor "not possess any graffiti materials[,]" including "acid, spray paint cans, marker pens, 'white-out,' and liquid shoe polish[.]" At the dispositional hearing, defense counsel objected to the condition and asked that the minor "be allowed to [possess] whatever tools and supplies they're using" at home, at school, and at a weekend art program "under supervision." Counsel requested the minor "be allowed to possess . . . markers and paint, to continue with his art[.]"

In response, the court said it would allow the minor "to possess art supplies for any program . . . under the supervision of school, parents, or a program approved by probation[.]" The dispositional order placing the minor on probation for up to six months provides in relevant part: "the Minor shall not possess any graffiti materials, including but not limited to acid, spray cans, marker pens, 'white out,' and liquid shoe polish; [m]ay use during art class under supervision [and] at home under parental supervision and [at] art program[s] in San Francisco approved by probation."

DISCUSSION

I.

*Substantial Evidence Supports the Finding the Minor Understood*
*the Wrongfulness of His Conduct*

Section 26 — which applies to Welfare and Institutions Code section 602 proceedings — establishes a presumption a minor under age of 14 is incapable of committing a crime. (*Gladys R., supra,* 1 Cal.3d at p. 867; *In re Joseph H.* (2015) 237 Cal.App.4th 517, 538 (*Joseph H.*).) The prosecution may rebut the presumption with clear and convincing evidence "the minor appreciated the wrongfulness of the conduct when it was committed. [Citation.]" (*Joseph H., supra,* at p. 538, quoting *In re Manuel L.* (1994) 7 Cal.4th 229, 232 (*Manuel L.*).) Knowledge of wrongfulness may not be inferred from the commission of the act alone, but "'the attendant circumstances of the crime, such as its preparation, the particular method of its commission, and its concealment' may be considered. [Citation.]" (*People v. Lewis* (2001) 26 Cal.4th 334,

8

378 (*Lewis*).) "In determining whether the minor knows of the wrongfulness of his conduct, the court must often rely on circumstantial evidence such as the minor's age, experience, and understanding, as well as the circumstances of the offense. . . . " (*In re James B.* (2003) 109 Cal.App.4th 862, 872.) "'[I]t is only reasonable to expect that generally the older a child gets and the closer [he] approaches the age of 14, the more likely it is that [he] appreciates the wrongfulness of [his] acts.' [Citation.]" (*Lewis, supra,* 26 Cal.4th at p. 378.)

On appeal, we affirm a finding that a minor understood the wrongfulness of his conduct if supported by substantial evidence. (*In re James B.*, *supra,* 109 Cal.App.4th at p. 872.) We "review the whole record in the light most favorable to the judgment and affirm the trial court's findings that the minor understood the wrongfulness of his conduct if they are supported by 'substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof. [Citations.]' [Citations.] The trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]" (*Ibid.*)

Here, the court found by clear and convincing evidence the minor knew the wrongfulness of his conduct. Substantial evidence supports this finding. (*Joseph H., supra,* 237 Cal.App.4th at p. 540.) The minor admitted he knew the difference between right and wrong, and that he would be punished for doing something wrong. He also gave an example illustrating right and wrong: he told Officer Haddad it was "'wrong'" to do "'graffiti.'" When asked for something "'right to do[,]'" the minor responded, "'Do graffiti on your own stuff.'" There is no dispute the graffiti here — on the bench and trash can — was not on the minor's "own stuff." Additionally, the minor fled from Officer Altwer, blamed J.V. for the tagging, and disclaimed ownership of the pens, glove, and slap tag.

9

This evidence compels the conclusion the minor appreciated the wrongfulness of his actions. (*Lewis, supra,* 26 Cal.4th at p. 379 [the minor's "flight from the scene and his conflicting statements to detectives constitute clear proof [he] knew the wrongfulness of his act"]; *In re Richard T.* (1985) 175 Cal.App.3d 248, 254, disapproved on another ground in *Manuel L., supra,* 7 Cal.4th at p. 239, fn. 5 [minor's attempt to shift blame indicated his awareness of the wrongfulness of breaking into and stealing cars]; *In re Cindy E.* (1978) 83 Cal.App.3d 393, 400 [the minor's "attempt to shift some of the blame to others and minimize her own involvement" suggested "she knew that what had happened was wrong"].) Finally, at the time of the charged offenses, the minor was just six months from his 14th birthday. As we have stated, "'the older a child gets and the closer [he] approaches the age of 14, the more likely it is that [he] appreciates the wrongfulness of [his] acts.' [Citation.]" (*Lewis, supra,* 26 Cal.4th at p. 378.) The court properly determined the prosecution rebutted the presumption of incapacity in section 26.

The minor's reliance on *In re Michael B.* (1983) 149 Cal.App.3d 1073 (*Michael B.*) does not alter our conclusion. In that case, the nine-year-old minor (defendant) shot an older boy and was charged with involuntary manslaughter. (*Id.* at p. 1088.) The defendant thought the gun was unloaded, pointed the gun at the victim and pulled the trigger hoping only to scare him; the defendant also offered expert testimony that he did not understand the consequences of threatening the victim with a gun, nor the concept of the permanence of death. (*Id.* at pp. 1087-1088.) After the shooting, the defendant was hospitalized because he was hysterical and incoherent. (*Id.* at p. 1078.) The appellate court determined the prosecution did not demonstrate the defendant had the legal capacity to commit the crime. (*Id.* at p. 1089.) Here and in contrast to *Michael B.,* the minor was almost 14 years old, and there was no evidence he did not understand the consequences of his conduct. Unlike the defendant in *Michael B.,* the minor was not hysterical and incoherent after the incident — he was evasive, combative, and uncooperative with law enforcement. *Michael B.* is inapposite.

10

*Sufficient Evidence Supports the Finding the Minor*
*Violated Section 594.2*

The minor contends insufficient evidence supports the finding he possessed graffiti materials with the intent to commit vandalism in violation of section 594.2, subdivision (a), which prohibits the possession of a "felt tip marker, or any other marking substance with the intent to commit vandalism or graffiti[.]"  According to the minor, the prosecution did not prove beyond a reasonable doubt he intended to use the items in his backpack to commit vandalism.  Circumstantial evidence may prove intent, and "connect a defendant with the crime and to prove his guilt beyond a reasonable doubt." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329, internal quotation marks omitted; *People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  We apply the substantial evidence standard to evaluate the minor's sufficiency of the evidence claim.  (*In re Manuel G.* (1997) 16 Cal.4th 805, 822.)

Here, sufficient evidence supports the finding the minor possessed the slap tag, glove, and pens with the specific intent to commit graffiti in violation of section 594.2, subdivision (a).  Officer Altwer saw the minor and J.V. writing on a bench, which had been tagged with the word "spit."  The officers found a white pen near the bench and noticed a garbage can also had the word "spit" on it.  The minor fled from the police and refused to let the officers search his backpack.  In the backpack — which the minor did not deny owning — the officers found a slap tag used by "serial vandalizers" with the word "spit" on it, as well as "practice drawings," a glove, and two pens.  The minor implicated J.V. as the party responsible for the graffiti, creating the inference each boy played a role in tagging the bench and the garbage can.[4]

---

[4]     Although the court dismissed the vandalism charge (Count 1), it found the officers credible and noted the minor was "around the scene of the vandalism that was occurring. . . . [ ] he was there.  He was around it.  He was doing some things."  The court determined the minor's presence, combined with "the writing materials, the glove, . . . the things that are in the backpack," established his intent to engage in vandalism.

The minor's reliance on a trio of cases —including *In re Daniel G.* (2004) 120 Cal.App.4th 824 (*Daniel G.*) — is misplaced. In that case, the juvenile court determined the defendant violated a local ordinance prohibiting gang members from loitering in an area "[w]ith the intent to publicize [their] dominance[.]" (*Id.* at p. 833.) The appellate court reversed, concluding the defendant's gang membership and his "mere presence at the location" did not demonstrate he possessed the requisite intent. (*Id.* at p. 835.) This is not a situation like the one in *Daniel G.* Here, the minor was not just "merely presen[t]" at a particular location — he was seen writing on a bench, and graffiti materials, a slap tag, and practice drawings were found in his backpack.

Relying on *People v. Stanley* (1995) 10 Cal.4th 764 (*Stanley*), the minor claims the court should have inferred "innocuous meaning" from the items in his backpack. In *Stanley*, our high court held "'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, *not the appellate court* which must be convinced of the defendant's guilt beyond a reasonable doubt.'" "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]' [Citation.]" (*Id.* at pp. 792-793, emphasis added.) The minor's reliance on *Stanley* is misplaced because the circumstances here reasonably justify the juvenile court's findings.

Nor did the court improperly shift the burden to the minor to prove he used the backpack "for school purposes." The court determined the prosecution established Count 2 beyond a reasonable doubt; it's observation regarding the absence of evidence the materials in the backpack were for academics described the state of the evidence and did not improperly shift the burden of proof. (*People v. Frye* (1998) 18 Cal.4th 894, 958, disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390 [trial court's "reference to 'innocence' did not shift any burden of proof"].)

## III.

### *Sufficient Evidence Supports the Finding the Minor Resisted Arrest*

The minor contends the resisting arrest finding must be reversed because there was insufficient evidence he "willfully delayed" the police officers. Section 148 makes it a misdemeanor to willfully resist, delay, or obstruct a peace officer engaged in the performance or attempted performance of his duties. (§ 148, subd. (a)(1).) The statute "'is most often applied to the physical acts of a defendant. [Citation.] For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148. [Citations.]'" (*In re Amanda A.* (2015) 242 Cal.App.4th 537, 546 (*Amanda A.*).) Here, there was substantial evidence the minor ran away from Officer Altwer. The minor ignored Officer Altwer's command to "stay there" and fled for approximately one to two minutes, covering "several hundred feet." As Officer Altwer pursued on his motorcycle, the minor "constantly look[ed] back to see" whether Officer Altwer was "getting closer[,]" creating an inference the minor heard Officer Altwer's command, and ignored it. This flight delayed Officer Altwer in the "'performance of his official duty, [and] violated'" section 148. (*In re Gregory S.* (1980) 112 Cal.App.3d 764, 778 ["flight and concealment" violated section 148].)

There is also substantial evidence the minor violated section 148 by physically resisting the officers. (*Amanda A., supra,* 242 Cal.App.4th at p. 546.) He refused to submit to a pat search, swore at Officer Altwer, and positioned his body to make it difficult for Officer Altwer to remove the backpack. When the officers grabbed the shoulder strap and the minor's arms, he became aggressive, belligerent, and loud, and engaged in a tug-of-war with the officers, resisting and struggling with them. The officers were able to handcuff the minor only after bringing him to the ground. *People v. Quiroga* (1993) 16 Cal.App.4th 961 — which concerned the defendant's refusal to cooperate with law enforcement officers and disclose his identity — does not assist the minor. Substantial evidence supports the finding the minor violated section 148, subdivision (a)(1).

IV.

*The "Graffiti Materials" Probation Condition Must Be Modified*

As relevant here, the dispositional order provides: "the Minor shall not possess any graffiti materials, including but not limited to acid, spray cans, marker pens, 'white out' and liquid shoe polish; [m]ay use during art class under supervision [and] at home under parental supervision and [at] art program[s] in San Francisco approved by probation." The minor contends this probation condition is unconstitutional because it lacks a knowledge requirement. According to the minor, absent a knowledge requirement, he could be found to have violated the condition even if unaware of the presence or character of the prohibited items.

We agree.[5] (*In re Sheena K.* (2007) 40 Cal.4th 875, 887-888; *People v. Freitas* (2009) 179 Cal.App.4th 747, 752-753.) We modify the probation condition as follows: "The minor is not to knowingly use or possess graffiti items, including but not limited to acid, spray cans, marker pens, 'white out' and liquid shoe polish, with intent to commit vandalism or graffiti. The minor may use these items in art class under supervision, at home under parental supervision, and during art programs in San Francisco approved by the probation department." The inclusion of knowledge and intent elements gives the minor notice of precisely what is prohibited: he may possess or use certain materials — including markers and white out under certain circumstances — but not with the intent to commit vandalism or graffiti.

DISPOSITION

The probation condition at issue is modified to provide: "The minor is not to knowingly use or possess graffiti items, including but not limited to acid, spray cans, marker pens, 'white out' and liquid shoe polish, with intent to commit vandalism or graffiti. The minor may use these items in art class under supervision, at home under

---

[5]    We note the California Supreme Court is considering whether a probation condition prohibiting a defendant from possessing firearms is unconstitutionally vague without an explicit knowledge requirement. (*People v. Hall*, review granted June 19, 2015, S227193.)

14

parental supervision, and during art programs in San Francisco approved by the probation department."  In all other respects, the juvenile court's jurisdictional and dispositional orders are affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

A145354