Filed 9/2/20  P. v. Rosas CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071950 |
| v. | (Super.Ct.No. INF1601416) |
| DARIO ROSAS, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Elaine M. Kiefer, Judge. Affirmed in part; reversed in part with directions.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

1

Dario Rosas was convicted of robbery, possessing a firearm and ammunition as a felon, and resisting arrest. On appeal, he argues there is insufficient evidence to support his robbery and resisting arrest convictions. He also argues: (1) the trial court erred by excluding evidence the robbery victim had committed burglary as a juvenile, which he sought to introduce to impeach the victim's credibility; (2) the prosecutor committed misconduct when he referred to the incident as a "robbery" when examining the victim; (3) we must strike the five-year serious felony enhancement because his admission was insufficient; and (4) the three one-year prison priors the court imposed are unauthorized under recently enacted legislation. We find no merit in all but his last argument. We therefore reverse the judgment, strike the prison prior enhancements, and remand to the trial court to resentence Rosas. We affirm the judgment in all other respects.

# I

## FACTS

On December 20, 2016, the Riverside County District Attorney charged Rosas with two counts of robbery (Pen. Code, § 211, unlabeled statutory citations refer to this code), possessing a firearm as a felon (§ 29800), possessing ammunition as a felon (§ 30305), misdemeanor resisting arrest (§ 148), and alleged he had a prior strike conviction (§ 667, subds. (c), (e)(1)), a prior serious felony conviction (§ 667, subd. (a)), and five prior prison terms (§ 667.5, subd. (b)). Rosas pled guilty to the two possession counts and not guilty to the remaining charges. His first trial resulted in a hung jury and a mistrial. The prosecution presented the following evidence at the second trial.

2

Around 4:00 in the morning on September 19, 2016, the victim was nearing the end of his shift as a cashier at a Mobil gas station in Monroe, when Rosas walked in. Though he didn't know him by name, the victim recognized Rosas. They had a friendly rapport. Rosas had come into the store multiple times a week over the previous few months, and sometimes he would bum cigarettes from the victim.

On this occasion, their rapport took a different turn. The prosecution played the jury a surveillance video showing what happened inside the store. When Rosas entered, the victim greeted him with a "How ya doing, bud?" and Rosas said he was doing alright. Rosas told the victim he only had a dollar and the two bantered a bit about what he could buy with that amount. The victim suggested a soda and offered to give him a dime to cover the CRV. Rosas made gestures towards buying the soda then said, "I tell you what now. Go ahead and open the cash register." The victim started laughing, and Rosas replied, "I'm serious." Rosas repeated that he was serious, then said, "All the money in the cash register. Or if not, you know something bad."

Rosas told the victim to stop stalling and continued to repeat that he was serious. The victim ended up giving Rosas the money in the register, which amounted to about $100, and Rosas walked out. The victim immediately called 911 and reported he had been robbed.

While on the stand, the victim made it clear he did not want to be in court describing the incident a second time. He said he had initially laughed at Rosas because he thought he was joking, but realized he was being serious when he threatened to do

"something bad." The following exchange took place between the prosecutor and the victim:

> Q. Why did you give him the money?
>
> A. I'm not—it's not my store. I don't care for it. If he wants the money and he's threatening, [then I'm like,] "Here, just take it. Be on your way."
>
> Q. You say "threatening." Did you feel like he was threatening you?
>
> A. No, but he was saying threatening things, and I mean, if I wanted to, I could have taken things in my own hands and done something about it, but I could care less. It's not my business. Take whatever you want. I don't care.
>
> Q. Did you think that if you didn't give him the money, he might hurt you in any way?
>
> [¶] . . . [¶]
>
> A. I didn't want there to be a chance of any conflict. I'm not fighting for someone else's store money.
>
> Q. Did he ever make any threatening *motions* to you in any way?
>
> A. No, he just said if I didn't give him the money, something bad was going to happen.

(Italics added.)

On cross-examination, defense counsel asked the victim if he understood the statement that "something bad" would happen as a threat, and the victim said that while some people might, he did not. Defense counsel asked, "you just wanted to give [him] the money because you wanted to avoid something from happening, right?" and the victim answered, "Correct."

4

Officer Cerna responded to the victim's call, and the victim identified Rosas as the perpetrator in a photographic lineup. Officer Cerna had known Rosas for 16 years. He watched the surveillance video and thought the perpetrator looked like Rosas.

On September 21, 2016, a man walked into a 7-Eleven in Indio, demanded the money in the register, and displayed a gun. After the robbery, the cashier was shown a six-pack photographic lineup that included Rosas, but he was unable to identify the perpetrator. Officer Cerna responded to this robbery as well. He viewed the surveillance video but did not identify Rosas from the footage. At trial, the cashier identified Rosas as the perpetrator.

The following day, while on patrol, Officer Traynham spotted Rosas and another man walking down a street in Indio. Officer Traynham had known Rosas for about 11 years, and Officer Cerna had told him Rosas was suspected for the recent Mobil and 7-Eleven robberies. Officer Traynham made eye contact with Rosas and requested backup. Rosas smiled at him and took off running. Officer Traynham and the other responding officers were unable to locate him, but they did retrieve a backpack he dropped during the pursuit. Inside the backpack was a shirt that looked like the one the perpetrator was wearing in the Mobil surveillance video.

The day after that (September 23, 2016), Officer Traynham saw Rosas on the street, standing outside of a house. He was in uniform and driving a marked patrol car. He stopped the car, addressed Rosas by name, and started to approach him. Rosas turned

and walked away towards a set of trash cans, then reached into his right pocket and took off running.

Suspecting Rosas might be going for a gun, Officer Traynham pulled out his gun and repeatedly ordered Rosas to stop. Rosas kept running. Officer Traynham ran after him and yelled that he would shoot if he didn't show his hands. Rosas put both his hands in the air but continued to run. Officer Traynham said they were both sprinting down the road but Rosas was faster. Officer Moore arrived with his lights and sirens activated and tried to block Rosas with his patrol car. Rosas dodged the car and ran around it, but then seemed to tire out. He stopped running and got on the ground face down with his arms out, and the officers arrested him.

Officers Traynham and Moore estimated that Rosas had given chase for about 200 feet or half a city block. Officer Traynham said he had yelled "over and over" for Rosas to stop and that his flight delayed the arrest.

The jury found Rosas guilty of the Mobil gas station robbery and resisting arrest. The jury hung on the 7-Eleven robbery, and the court dismissed the count. Rosas waived trial on the prior allegations. After taking his admissions, the trial court sentenced him to 15 years 8 months in prison. For the robbery, the court imposed the midterm of three years and doubled it based on the prior strike conviction. The trial court also imposed a five-year prior serious felony enhancement and three one-year prison prior enhancements (though it stayed one of the enhancements because it was based on the same felony conviction as the serious felony enhancement). (See *People v. Jones* (1993) 5 Cal.4th

6

1142, 1153 [court may not impose a one-year enhancement under § 667.5, subd. (b) based on the same conviction underlying a § 667 enhancement].) On the People's motion, the court dismissed the remaining two prison priors.

Rosas filed a timely notice of appeal.

## II

## ANALYSIS

A.      *Substantial Evidence Supports the Robbery Conviction*

Rosas argues the evidence is insufficient to support the robbery conviction. When faced with such a challenge, we "'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) We focus on all the evidence presented to the jury, not isolated portions of the record. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1203.) We do not reweigh the evidence, and the fact that the evidence might lead us to reach a different verdict doesn't mean the evidence supporting the verdict is insubstantial. (*People v. Holt* (1997) 15 Cal.4th 619, 669.)

Robbery is the "taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Here, the parties' dispute over the sufficiency of the evidence focuses on the element of fear, as there was no evidence Rosas used force to obtain the money.

7

Rosas argues the victim's testimony shows he wasn't afraid and didn't take him seriously. The People argue the victim's denial of being afraid is not dispositive and that a reasonable juror could conclude Rosas's threat caused him to hand over the money. We agree with the People.

The fear element of robbery "'is satisfied when there is sufficient fear *to cause the victim to comply* with the unlawful demand for his property.'" (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774-775, italics added.) "It is not necessary that there be direct proof of fear; fear may be inferred from the circumstances in which the property is taken. [Citation.] [¶] If there is evidence from which fear may be inferred, the victim need not explicitly testify that he or she was afraid. [Citations.] Moreover, the jury may infer fear "'from the circumstances *despite even superficially contrary testimony of the victim*."'" (*Id.* at p. 775, italics added.)

"The requisite fear need not be the result of an express threat or the use of a weapon. [Citations.] Resistance by the victim is not a required element of robbery [citation], and the victim's fear need not be extreme to constitute robbery [citation]. All that is necessary is that the record show ""'conduct, words, or circumstances reasonably calculated to produce fear.'""" (*People v. Morehead*, *supra*, 191 Cal.App.4th at p. 775.)

Here, the record contains sufficient evidence from which the jury could infer that Rosas's conduct and threat to do "something bad" caused the victim to comply out of fear of a physical altercation. Perhaps from a prosecutorial standpoint, the victim's testimony was not ideal for a robbery trial. He said Rosas threatened him, but he also said he didn't

personally take Rosas's statement as a threat and he wasn't scared of him. He also said he didn't care about the money because it was a relatively small amount and it belonged to his employer. But the standard of review requires us to look at *all* of the evidence and draw all reasonable inferences in support of the verdict. True, the victim did say he wasn't afraid of Rosas and didn't feel threatened, but the jury was free to give less weight to those portions of his testimony and focus on other evidence that was more damaging to Rosas. For example the jury could give more weight to the video that showed him repeating several times that he was "serious" and then threatening to do "something bad" if the victim didn't hand over the money. They could also give more weight to the victim's testimony that he wasn't going to "fight[]" or risk a "chance of conflict" over the small amount of money in the cash register. Though the victim did not describe his reaction as fearful, the jury did not have to believe him. They could reasonably conclude from the video footage and his description of the event that, despite disclaiming fear, it was fear—fear of a fight—that caused him to comply with Rosas's unlawful demand. The fact he told the jury he had no desire to fight over the money does not matter for our purposes. Nor does it matter that he seemed to think he could have taken Rosas in a fight. What does matter is that Rosas's words and conduct unquestionably made the victim feel as though a fight was inevitable if he didn't comply. Creating such a calculus in the mind of a victim is precisely what the fear element of robbery describes.

Rosas's comparison of his case to *People v. Welsh* (1936) 7 Cal.2d 209 is unpersuasive. In *Welsh*, the defendant was convicted of robbery, among other things,

9

based on the victim's testimony that after kidnapping her he "reached over and took her purse, took the cigarettes therein out of it and without touching the money or other contents put the purse back in her lap." (*Id.* at p. 212.) The court reversed the robbery conviction because there was no evidence he had used force or fear to take the cigarettes from the victim. No words were exchanged and no movements were made other than the simple act of reaching over and taking the cigarettes. That is a far cry from what happened here. Rosas demanded the money from the victim multiple times, ordered him not to stall, and resorted to making a threat when he didn't immediately comply. We conclude a reasonable jury could find Rosas's conduct was calculated to, and in fact did, produce sufficient fear in the victim to comply with his demand.

B.      *Substantial Evidence Supports the Resisting Arrest Conviction*

Rosas also argues there was insufficient evidence to support the resisting arrest conviction because he did not actually delay the officer nor did he have reason to know he was "legally required to stop." We disagree.

Under section 148, subdivision (a)(1), anyone who "willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a misdemeanor. This offense is commonly referred to as resisting arrest, and its elements are: "'(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace

10

officer engaged in the performance of his or her duties.'" (*In re Amanda A.* (2015) 242 Cal.App.4th 537, 546.)

"Section 148 is most often applied to the physical acts of a defendant. [Citation.] For example, physical resistance, hiding, or *running away from a police officer* have been found to violate section 148." (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329, italics added.)

Rosas argues that by fleeing for such a short distance—200 feet at most—he did not delay the officers but was simply "slow to comply" in his arrest. Unfortunately for Rosas, running from an officer who is lawfully and objectively trying to detain you is a "garden-variety" violation of section 148, and the offense contains no distance requirement. (*In re Andre P.* (1991) 226 Cal.App.3d 1164, 1169; see also *People v. Allen* (1980) 109 Cal.App.3d 981, 986-987 (*Allen*) [defendant's flight delayed the officers in detaining him and therefore violated section 148].) At trial, Officer Traynham said he had to sprint after Rosas who was running "pretty fast", and Officer Moore said he tried unsuccessfully to corner him with his patrol car. Officer Traynham also said Rosas's conduct had made the arrest take longer than it should have. The fact his flight did not last very long is immaterial. All that is required is avoidant conduct that causes a delay, and there is sufficient evidence of that here.

We also reject Rosas's claim that he reasonably couldn't have known he was required to stop because Officer Traynham "did not tell [him] he was under arrest and neglected to explain the basis for the arrest." Once again, Rosas attempts to import an

11

element into the offense that isn't there. Section 148 simply requires that an officer be engaged in the performance of their official duties and that the defendant is aware of that fact, or reasonably should be. Put differently, although police officers must have lawful bases for the actions they are attempting to undertake, they need not provide those reasons before acting. A defendant simply needs to be on reasonable notice that the officer is attempting to perform an official action.

As the court explained in *Allen*, "Since the officer had the legal right, indeed duty, [citation] to detain appellant, appellant, if he was aware of the officer's *desire*, had the concomitant duty to permit himself to be detained. [Citation.] Therefore, on the face of the statute it would appear that the physical activity that appellant engaged in, flight and concealment, which *delayed* the officer's performance of his official duty, violated the statute." (*Allen*, *supra*, 109 Cal.App.3d at p. 985, first italics added.) Here, although Officer Traynham had a lawful basis for both detaining *and arresting* Rosas, it is sufficient he had a lawful basis for detaining him. The question then arises whether the record contains substantial evidence to support an inference that Rosas knew or reasonably should have known Officer Traynham was attempting to detain him. The answer is yes. Officer Traynham was in uniform when he addressed Rosas by name and told him to stop several times. As long as his actions were lawful, Rosas was not entitled to know the reasons for them before he obeyed. That Rosas ran despite repeated, clear orders to stop from an officer in uniform is sufficient to constitute a violation of section 148.

Rosas's reliance on *In re Charles G.* (2017) 14 Cal.App.5th 945, hurts, not helps, his case. There, the defendant dropped his backpack and ran when he saw an officer drive by in a patrol car. The appellate court concluded his reaction to the patrol car, though suspicious, could not support a section 148 conviction because there was no evidence to suggest he "knew the police were after him." (*In re Charles G.*, at p. 958.) The court reasons that the defendant couldn't have been expected to understand the officer wanted to detain him based on the officer's sole act of driving by. What was needed to put the defendant on notice, the court explained, were more overt actions such as physically pursuing him, ordering him to stop, flashing the patrol lights, or sounding the siren. (*Ibid.*) Those are precisely the actions Officers Traynham and Moore undertook here, making it obvious they wanted to detain Rosas.

C.       *Exclusion of Proposed Impeachment Evidence Was Proper*

    1.  *Additional background*

Before trial, the People brought a motion in limine to exclude any evidence of the victim's criminal record as impeachment evidence. The victim had three nonfelony driving-related convictions, as well as some criminal contacts from when he was a minor. The People argued that the driving-related convictions did not constitute proper impeachment evidence because they were not felonies and didn't involve crimes of moral turpitude. At a hearing on the motion, defense counsel informed the court that the victim had a juvenile adjudication for first degree burglary. The court indicated the adjudication would not be proper impeachment evidence because it wasn't a conviction. Defense

13

counsel responded that the underlying conduct (as opposed to the fact of the adjudication) "may" be admissible as impeachment evidence. The court said it would grant the People's motion to exclude the evidence, but added that if defense counsel had authority to support his position regarding the burglary, it would look at the authority the following court day. Defense counsel never revisited the issue.

2. *Discussion*

Rosas now argues the trial court committed reversible error by excluding evidence that the victim committed burglary when he was a minor. As an initial matter, Rosas forfeited this challenge by failing to take the trial court up on its offer to reconsider its in limine ruling. "A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself. [Citations.] "'""Where the court rejects evidence temporarily or withholds a decision as to its admissibility, the party desiring to introduce the evidence should renew his offer, or call the court's attention to the fact that a definite decision is desired.'""" (*People v. Holloway* (2004) 33 Cal.4th 96, 133.)

But even if Rosas had not forfeited the issue, we would conclude it fails on its merits. While defense counsel was correct the conduct underlying a juvenile adjudication can be admissible for impeachment purposes if the conduct involves moral turpitude (*People v. Lee* (1994) 28 Cal.App.4th 1724, 1740), Rosas cannot demonstrate he was prejudiced by the court's ruling.

14

Generally, we review an evidentiary error under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, which asks whether it is "reasonably probable that a result more favorable to [the defendant] would have been reached in the absence of the error." (*Id.* at p. 837; *People v. Breverman* (1998) 19 Cal.4th 142, 174.) However, Rosas argues the error violated his federal constitutional confrontation and fair trial rights, and as such, we must reverse unless we find the error "'harmless beyond a reasonable doubt.'" (*People v. Brown* (2003) 31 Cal.4th 518, 576, quoting *Chapman v. California* (1967) 386 U.S. 18, 24.) We find the error harmless under either standard.

Rosas claims the ruling prejudiced him because the evidence in this case was close and the victim "was the only percipient witness to describe what appellant said." While it's true there wasn't another *person* inside the gas station to testify about what Rosas said and did, a surveillance camera recorded the entire interaction. Thus, even if we assume that evidence of juvenile delinquency would have tarnished the victim's credibility with the jurors, they were able to see and hear for themselves how the incident took place. We can conceive of no harm to Rosas from the exclusion of the impeachment evidence.

D.      *The Prosecutor's Use of the Word "Robbery" Was Not Misconduct*

During direct examination, the following exchanged occurred between the prosecutor and the victim.

Q.  How long had you worked there at that Mobil station?

A.  I started in February and got fired in September, a week after the robbery.

15

Q.  Now, you mentioned that there was a robbery. Was that on September 19, 2016?

A.  Correct, yes.

Q.  . . . [W]ere you on shift at the Mobil?

A.  Yes.

[¶] . . . [¶]

Q.  Were you alone on shift that morning?

A.  Yes.

Q.  Did you ultimately call 911 about the robbery you mentioned?

A.  Yes.

[Defense counsel]:  Object to the word "robbery."

THE COURT:  Overruled. Speaking objections only. Overruled. You may answer.

THE WITNESS:  Yes.

After defense counsel's objection, the prosecutor referred to the robbery as the "incident."

Rosas argues the prosecutor committed misconduct by asking the victim if he called 911 "after the 'robbery.'" He contends the prosecutor's characterization of the incident as a robbery constituted a legal conclusion, invaded the province of the jury, and rendered his trial fundamentally unfair. We disagree.

"'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a

denial of due process.' [Citations.] Under California law, a prosecutor who uses deceptive or reprehensible methods of persuasion commits misconduct even if such actions do not render the trial fundamentally unfair." (*People v. Doolin* (2009) 45 Cal.4th 390, 444.) "Generally, a claim of prosecutorial misconduct is not cognizable on appeal unless the defendant made a timely objection and requested an admonition." (*Ibid.*)

Here, although defense counsel objected to the prosecutor's use of the word robbery, he did not provide the basis for his objection or request an admonition. In any event, we conclude the prosecutor did not engage in misconduct by referring to the incident as a robbery. This issue is similar to the one the court faced in *People v. Gray* (2005) 37 Cal.4th 168, where the defendant argued the prosecutor committed misconduct by referring to the incident as a "burglary." (*Id.* at p. 212.) The court concluded the prosecutor's references to burglary were "innocuous" because, in that context, the jurors would have understood the references to be "a shorthand reference meaning a break-in or unauthorized entry" and not "unsolicited testimony on whether the legal elements of a burglary had been proved." (*Id.* at pp. 212-213.)

Here, the offending term originated with the victim, who clearly viewed the incident as a robbery. After the objection, the victim continued to refer to the incident as a robbery, as did Officer Cerna. In context (the exchange quoted above), we think it's clear that the prosecutor's use of the term was simply a reference to the victim's description of the event and not a legal conclusion that a robbery had in fact occurred. His question was not intended to elicit the victim's opinion about *whether the elements of*

17

*robbery had been satisfied* but was meant instead to find out *when the victim called 911.* In addition, the trial court instructed the jurors that nothing the attorneys say is evidence and that they alone were to determine the facts based only on the evidence presented at trial. We presume they understood and followed these directions. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 905.)

E.    *The Prior Serious Felony Enhancement Is Valid*

Rosas argues his admission that he suffered a robbery conviction in 2009 was insufficient to support the imposition of the five-year serious felony enhancement under section 667, subdivision (a)(1). As we understand his argument, a defendant must not only personally admit the felony conviction on which the enhancement is based, but must also admit the enhancement. That is not the law.

1.    *Additional background*

The information alleged Rosas had previously been convicted of a prior strike (§ 667, subds. (c), (e)(1)), a prior serious felony (§ 667, subd. (a)), and five prior prison offenses (§ 667.5, subd. (b)). One of the alleged prior convictions, a June 2009 conviction for robbery in Riverside County Superior Court (case No. INF063415), was alleged to be the basis of the prior strike, the prior serious felony, and one of the prison priors.

After Rosas waived trial on his prior convictions and before the court accepted his admissions, he told the court he understood that his admissions would form the basis for a strike prior, a serious felony prior, and three prison priors. He also told the court he understood that the strike prior would have the effect of doubling his punishment, the

18

serious felony prior would result in an additional five-year term, and the prison priors would result in an additional one-year term for each. The following exchange then took place.

> THE COURT: Then is it true that on—do you admit or deny that on or about June 24, 2009, in the Superior Court, State of California, County of Riverside, you were convicted of the crime of robbery, a serious and violent felony, a violation of Penal Code section 211, within the meaning of Penal Code sections 667(c) and (e)(1) and 1170.12? Do you admit or deny that strike prior?

> ROSAS: I admit.

> THE COURT: And the Court will also find that that admission satisfies the admission for the serious prior under 667(a) because it is the same prior. Anybody disagree with that?

> [Prosecutor]: Agree.

> THE COURT: All right. . . .

> [Defense counsel]: Yes, your Honor.

(Italics added.)

### 2. *Discussion*

Rosas argues that by answering "Yes, your Honor," *his counsel* admitted the serious felony enhancement when he, Rosas, was required to personally admit it. Rosas misunderstands the relevant law. There is no requirement that a defendant admit the applicability of *an enhancement*. Rather, a defendant's knowing and voluntary admission of *the facts* forming the basis for the enhancement is sufficient. (*People v. Ebner* (1966) 64 Cal.2d 297, 303 [a "[d]efendant's admission of the prior convictions is not limited in

19

scope to the fact of the convictions *but extends to all allegations concerning the felonies contained in the information*"], italics added.)

Here, the record demonstrates that Rosas's admission of the 2009 robbery was knowing and voluntary because he was on notice of the consequences of doing so. The People alleged the 2009 robbery conviction formed the basis of the serious felony enhancement allegation, and the court informed Rosas that by admitting the conviction he would face a five-year enhancement under section 667.5, subdivision (a). Because he admitted the conviction fully aware of the consequences of doing so, we reject the claim that the serious felony enhancement is unauthorized.

Rosas's claim that his admission was insufficient stems from his misreading of *People v. Lopez* (1985) 163 Cal.App.3d 946 (*Lopez*). He argues *Lopez* held the trial court was correct to dismiss a serious felony enhancement because there was "no admission to a serious felony enhancement"—only an admission to the underlying felony conviction.

But that is not what happened in *Lopez.* Rather, the appellate court affirmed the trial court's dismissal of the serious felony enhancement allegation because the prosecution did not sufficiently allege—and as a result the defendant did not sufficiently admit—that the underlying felony was serious within the meaning of section 667.5, subdivision (a). The prosecution had alleged only that the defendant had suffered a prior burglary conviction and the defendant admitted that fact. However, for the burglary to qualify as a serious felony under section 667.5, subdivision (a) it had to be a residential burglary. Thus, because the prosecution alleged only a burglary and not a *residential*

20

burglary and because the defendant admitted only a burglary and not a *residential* burglary, the trial court was correct to dismiss the enhancement allegation. Here, in contrast, the information alleged a serious felony within the meaning of section 667.5, subdivision (a), the trial court advised Rosas of the consequences of admitting the felony, and Rosas admitted it.

As a final point, we note Rosas's statement that *if* we find his admission insufficient and remand to the trial court to obtain a valid admission, the trial court "may exercise its [new] discretion to dismiss the . . . prior . . . pursuant to SB 1393." Senate Bill No. 1393 (2017-2018 Reg. Sess.) (SB 1393), which became effective on January 1, 2020, "amends sections 667(a) and 1385, subdivision (b) . . . to give courts discretion to dismiss or strike a prior serious felony conviction for sentencing purposes." (*People v. Garcia* (2018) 28 Cal.App.5th 961, 965.)

As the People correctly point out, Rosas has framed this issue as an observation and not as an argument that SB 1393 applies to his case. But even if he had made the argument, we would not remand for the trial court to reconsider the enhancement. This is because remand is unnecessary where "the record reveals a clear indication that the trial court would not have reduced the sentence even if at the time of sentencing it had the discretion to do so." (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.) Here, we have the benefit of knowing what the trial court would do if SB 1393 had been in effect when it sentenced Rosas's because it expressly said it would not be willing to strike the serious felony enhancement under section 1385. "The defendant has been convicted here

21

of a violent strike offense, which is Penal Code section 211. In addition, the defendant has prior strike convictions and has numerous convictions spanning almost 20 years. The defendant has never had a period where he has truly been crime-free. So the Court will not strike the 5-year prior." Under these circumstances, remand would be unnecessary.

F. *The Two Prison Priors Are Unauthorized*

While this appeal was pending, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats 2019, ch. 590, § 1) became effective. The new law amended Penal Code section 667.5 to eliminate one-year enhancements for all offenses except sexually violent prior offenses as defined in Welfare and Institutions Code section 6600, subdivision (b). Rosas argues, and the People correctly concede, that the new law applies to his case because it's ameliorative in nature and his judgment was not final when it became effective. (See, e.g., *People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

The parties' dispute concerns the appropriate remedy. Rosas argues we should modify his sentence to reflect the stricken enhancements, but the People argue we should remand for resentencing after striking the enhancement. We conclude the People have the better argument. In general, when an error affects part of a sentence, we remand for a full resentencing on all counts and allegations, unless the court already imposed the maximum allowable term. (*People v. Buycks* (2018) 5 Cal.5th 857, 893, 896, fn. 15.) "On remand, the trial court is entitled to reconsider its entire sentencing scheme," but may not sentence the defendant "in excess of his original sentence." (*People v. Burns* (1984) 158 Cal.App.3d 1178, 1184.) Here, the trial court imposed the midterm for the robbery and

22

thus did not impose the maximum possible sentence. Therefore, on remand, it should have the opportunity to reassess the entire sentence—with the caveat that it may not impose a sentence that exceeds the original.

## III

## DISPOSITION

We reverse the judgment as to the sentence and strike the three prior prison term enhancements imposed under section 667.5, subdivision (b). We remand the matter to the trial court with directions to resentence Rosas in accordance with this opinion. The clerk of the court shall prepare an amended abstract of judgment to reflect the stricken enhancements and additional changes made at resentencing, if any, and forward it to the Department of Corrections and Rehabilitation. In all other respects, we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
                                                                                    J.

We concur:

RAMIREZ _____
                    P. J.

MILLER _____
                    J.

23